1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10   WILLIAM J. BRYAN,

11              Petitioner,              No. 2:03-cv-1702 JAM KJN P

12        vs.

13   TOM CAREY, Warden,

14              Respondent.        FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17              Petitioner is a state prisoner proceeding without counsel with an application for a

18   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1996 conviction on

19   charges of attempted first degree robbery, two counts of assault with a firearm, possession of a

20   firearm by a felon, and burglary.  Various weapon enhancements and prior conviction allegations

21   were found to be true.  On November 22, 1996, petitioner was sentenced to 94 years to life[1] in

22   prison.  (January 13, 2004 Answer, Ex. F at 2.)  Petitioner raises multiple claims in his second

23   amended petition (hereafter "Pet."), filed August 10, 2003, that his prison sentence violates the

24   _____

25         [1]  Petitioner was sentenced to three 25-years-to-life terms, plus 19 years, for a total of 94
     years.  (January 13, 2004 Answer, Ex. F at 2.)  Unless otherwise noted, all subsequent referrals to
26   respondent's exhibits refer to the exhibits appended to the answer filed January 13, 2004.

1  Constitution.  After carefully considering the record, the undersigned recommends that the

2  petition be denied.

3  II.  Procedural History

4         As noted above, on November 22, 1996, petitioner was sentenced to 94 years to

5  life in prison.  Petitioner appealed his conviction.  On April 22, 1999, the California Court of

6  Appeal for the Third Appellate District affirmed the conviction, but remanded the case to the

7  Sacramento County Superior Court for further proceedings on sentencing.  (Respondent's Ex. B.)

8         On June 4, 1999, petitioner filed a petition for review in the California Supreme

9  Court.  (Respondent's Ex. C.)  The petition for review was denied on August 11, 1999.

10        Petitioner filed a petition for writ of habeas corpus in the Sacramento County

11  Superior Court on June 16, 1999, which was denied on August 6, 1999.  (Respondent's Ex. D.)

12        On September 22, 1999, petitioner filed a petition for writ of habeas corpus in the

13  California Court of Appeal, Third Appellate District.  That petition was denied on September 30,

14  1999.  (Respondent's Ex. E.)

15        On November 15, 1999, after hearing on the remand, the Sacramento County

16  Superior Court sentenced petitioner to a state prison term of 94 years to life.  (Reporter's

17  Transcript ("RT") at 9-10.)

18        After re-sentencing, petitioner filed an appeal to the California Court of Appeal,

19  Third Appellate District.  The sentence was affirmed on August 7, 2001.  (Respondent's Ex. F.)

20        On September 10, 2001, petitioner filed a second petition for review on the issue

21  of sentencing.  On October 17, 2001, the California Supreme Court denied the petition for

22  review.  (Respondent's Ex. G.)

23        Petitioner filed a second petition for writ of habeas corpus in the Sacramento

24  County Superior Court on December 26, 2001.  The petition was denied on February 4, 2002, as

25  untimely and successive.  (Respondent's Ex. H.)

26        On February 7, 2002, petitioner filed a second petition for writ of habeas corpus in

1  the California Court of Appeal, Third Appellate District.  The petition was denied on April 11,

2  2002.  (Respondent's Ex. I.)

3          On June 3, 2002, petitioner filed a third petition for writ of habeas corpus in the

4  California Court of Appeal.  That petition was denied on June 6, 2002.  (Respondent's Ex. J.)

5          On July 3, 2002, petitioner filed a petition for writ of habeas corpus in the

6  California Supreme Court, which was denied on March 26, 2003.  (Respondent's Ex. K.)

7          On August 13, 2003, petitioner filed a petition for writ of habeas corpus in this

8  case.  Respondent filed an answer on January 13, 2004.  Petitioner's motion for stay and

9  abeyance was granted on April 14, 2005, and this action was stayed pending petitioner's return to

10 state court to exhaust state court remedies.

11         Petitioner filed a third petition for writ of habeas corpus in the Sacramento County

12 Superior Court which was denied on May 9, 2005.  (Am. Pet., Ex. D.)

13         On May 25, 2005, petitioner filed a fourth petition for writ of habeas corpus in the

14 California Court of Appeal, which was denied on June 9, 2005.  (Am. Pet., Ex. E.)  Petitioner

15 filed that same petition for writ of habeas corpus in the California Supreme Court on June 27,

16 2005.  The California Supreme Court denied that petition on May 10, 2006.  (Am., Pet., Ex. DD.)

17         On August 14, 2006, petitioner filed a motion to amend and a proposed second

18 amended petition.  (Dkt. No. 29.)  On September 15, 2006, the stay was lifted, and respondent

19 was ordered to file either an opposition to the motion or to file a response to the amended

20 petition.  (Dkt. No. 30.)  Respondent filed an answer to the second amended petition on

21 December 8, 2006.  (Dkt. No. 36.)  Petitioner filed a traverse on January 3, 2007.  (Dkt. No. 37.)

22 III.  Facts[2]

23         On August 18, 1995, [petitioner] was a guest in Henry Trujillo's
           house.  [Petitioner] told Trujillo, a drug user, that he was interested

24

25         [2]  The facts are taken from the opinion of the California Court of Appeal for the Third
     Appellate District in People v. Bryan, No. 3 Crim. C025305 (April 23, 1999), a copy of which
26   was appended to Respondent's Answer as Exhibit B, filed on January 13, 2004.

in buying drugs.  Trujillo arranged to buy one-eighth ounce of methamphetamine for [petitioner] for $140 from a local drug dealer.  Trujillo facilitated the exchange of money for drugs on [petitioner's] behalf.  The substance, however, was not methamphetamine; in fact the substance turned into dough and was useless.  [Petitioner] was very angry and demanded a refund.

Trujllo tried unsuccessfully to find the dealer.  [Petitioner's] anger escalated over the next few days.  He appeared at Trujillo's often, threatening violence if Trujillo did not get his money back.  He was accompanied on several occasions by Lisa McGuire.  She suggested he take Trujillo's television as compensation for the loss.

On the afternoon of August 20, [petitioner] and McGuire visited a friend.  At approximately 1:30 a.m. the following day they went to Trujillo's, at which time [petitioner] told McGuire he had obtained a firearm earlier at his friend's house.  They entered the house through an unlocked door.  He awoke Trujillo, who was sleeping on the couch, and ordered him to unplug the television.  He then hit Trujillo on the head with the handgun which discharged and struck McGuire in the stomach.  Both victims were seriously injured.

[Petitioner] did not testify.  His witnesses testified he was not the intruder.

(Respondent's Ex. B. at 2-3.)

IV.  <u>Standards for a Writ of Habeas Corpus</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1994); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citation omitted).  A federal writ is not available for alleged error in the interpretation or application of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton v. Cupp</u>, 768 F.2d at 1085.  Habeas corpus cannot be used to try state issues de novo.  <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  <u>See</u> <u>Lindh v.Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citation omitted).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state

1    court reaches a decision on the merits, but provides no reasoning to support its conclusion, a

2    federal habeas court independently reviews the record to determine whether habeas corpus relief

3    is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

4    Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) ("Independent review of the record is not de

5    novo review of the constitutional issue, but rather, the only method by which we can determine

6    whether a silent state court decision is objectively unreasonable."); accord Pirtle v. Morgan, 313

7    F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached the merits of

8    a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential

9    standard does not apply and a federal habeas court must review the claim de novo.  Nulph v.

10   Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle, 313 F.3d at 1167.

11   V.  Petitioner's Claims

12                    A.  Alleged Brady v. Maryland Violation

13                    Petitioner claims the deputy district attorney produced an incomplete arrest record

14   for witness Lisa McGuire, depriving petitioner of critical impeachment evidence that Ms.

15   McGuire had sustained an additional ten felony arrests.  (Am. Pet. at 7.)

16                    The last reasoned rejection of this claim is the decision of the Sacramento County

17   Superior Court on petitioner's first petition for writ of habeas corpus.  (Respondent's Ex. D.)

18   The superior court addressed this claim as follows:

19                    Petitioner further states that the prosecution in the most recent
                      case failed to provide a complete rap sheet for Ms. McGuire.  The
20                    court's file in that case shows that petitioner previously raised this
                      question in a new trial motion and the court had its bailiff check
21                    the information given to petitioner's attorney.  The court found that
                      the correct information was given.
22

23   (Id.)

24                    The United States Supreme Court has held "that the suppression by the

25   prosecution of evidence favorable to an accused upon request violates due process where the

26   evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of

1  the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963); see also Bailey v. Rae, 339 F.3d

2  1107, 1113 (9th Cir. 2003).  The duty to disclose such evidence is applicable even though there

3  has been no request by the accused, United States v. Agurs, 427 U.S. 97, 107 (1976), and

4  encompasses impeachment evidence as well as exculpatory evidence.  United States v. Bagley,

5  473 U.S. 667, 676 (1985).  A Brady violation may also occur when the government fails to turn

6  over evidence that is "known only to police investigators and not to the prosecutor."

7  Youngblood v. West Virginia, 547 U.S. 867, 870 (2006) (quoting Kyles v. Whitley, 514 U.S.

8  419, 437, 438) ("[T]he individual prosecutor has a duty to learn of any favorable evidence known

9  to the others acting on the government's behalf in the case, including the police").  There are

10  three components of a Brady violation:  "[t]he evidence at issue must be favorable to the accused,

11  either because it is exculpatory, or because it is impeaching; the evidence must have been

12  suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."

13  Strickler v. Greene, 527 U.S. 263, 281-82 (1999); see also Banks v. Dretke, 540 U.S. 668, 691

14  (2004); Silva v. Brown, 416 F.3d 980, 985 (9th Cir. 2005).  In order to establish prejudice, a

15  petitioner must demonstrate that "there is a reasonable probability that the result of the trial

16  would have been different if the suppressed documents had been disclosed to the defense."

17  Strickler, 527 U.S. at 289.  "The question is not whether petitioner would more likely than not

18  have received a different verdict with the evidence, but whether in its absence he received a fair

19  trial, understood as a trial resulting in a verdict worthy of confidence." Id. (quoting Kyles, 514

20  U.S. at 434); see also Silva, 416 F.3d at 986 ("a Brady violation is established where there 'the

21  favorable evidence could reasonably be taken to put the whole case in such a different light as to

22  undermine confidence in the verdict.'")  Once the materiality of the suppressed evidence is

23  established, no further harmless error analysis is required.  Kyles, 514 U.S. at 435-36; Silva, 416

24  F.3d at 986.  "When the government has suppressed material evidence favorable to the

25  defendant, the conviction must be set aside."  Silva, 416 F.3d at 986.

26         The last reasoned decision on petitioner's Brady claim is the ruling by the state

7

1  superior court in response to petitioner's habeas petition.  Accordingly, this court will analyze the

2  trial court's  decision as the relevant state-court determination under AEDPA.  See Taylor v.

3  Maddox, 366 F. 3d 992, 999 n.5 (9th Cir. 2004).  In denying the petition, the superior court found

4  that the trial court had the bailiff confirm that the rap sheet presented at trial was accurate.  The

5  bailiff confirmed this information was correct.  (RT 817.)  Under these circumstances,

6  petitioner's failure to have the proposed evidence admitted at trial could not have had a negative

7  impact on his defense.[3]  Petitioner has not demonstrated how possible impeachment by these

8  alleged arrests would have harmed Ms. McGuire's credibility more than it was impugned at trial.

9  Lisa McGuire was impeached by her felony conviction for burglary.  (Reporter's Transcript

10  ("RT") 306-07.)  Ms. McGuire was also impeached by her own prior conflicting statements as to

11  petitioner's culpability.  (RT 475; 482; 488; 493-95 (testimony of four separate witnesses).)  This

12  court finds petitioner received a fair trial, even in the absence of this information as to alleged

13  arrests of Ms. McGuire.  Accordingly, petitioner is not entitled to federal habeas relief with

14  respect to this claim.

15          B.  Alleged Prosecutorial Misconduct

16          Petitioner claims he suffered prosecutorial misconduct when the prosecution

17  _____

18      [3]  Petitioner has not demonstrated that the arrests noted on his submitted Exhibit H (Dkt. No. 29-4) were material or admissible under California law.  Petitioner did not provide a

19  "CLETS Database Response," as was used at trial.  Rather, petitioner submitted a form entitled "Arrest History."  (Id.)  This distinction is important because at least seven of the arrests reflected

20  on the Arrest History contain the same court case number:  95F08611 for felony burglary. Moreover, the entries on the far right column suggest some of the entries describe how the

21  warrant was handled rather than expressing different arrest warrants for Ms. McGuire.  For example, the entries read:  "filed Muni," "filed Sup," "commitment," "comm rear," "comm

22  warr," and "comm rear."  Petitioner has not provided a legend to explain the abbreviations used.

    The first three entries on the form occurred in 1998, and the fourth entry is dated

23  September 19, 1996, after the verdict was rendered in petitioner's trial.  Therefore, entries 1 - 4 are not relevant to the instant action.  Entry 6 bears the same case number as entry 4.

24      Entries 5 through 13 took place October 6, 1995, through July 31, 1996.  The victim in the underlying criminal case was injured on August 21, 1995.  The criminal jury trial began on

25  September 3, 1996.  Therefore, entries 5 through 13 occurred during the pendency of the instant underlying criminal action, and appear to suggest a relationship to that underlying criminal

26  action, as opposed to separate criminal convictions.

1   allowed witness McGuire to deny receiving a plea bargain to avoid prison in exchange for her

2   allegedly perjurious testimony, and the prosecution allegedly misstated the law in front of the

3   jury to protect the allegedly false testimony.  (Pet. at 5.)

4           The last reasoned rejection of this claim is the 2005 decision of the Sacramento

5   County Superior Court on petitioner's petition for writ of habeas corpus.  After finding the

6   petition was successive and untimely, the superior court reviewed the documents petitioner

7   presented in connection with this claim and found:

8           None of the above constitutes any "newly discovered evidence"
            of any kind of impropriety on the part of Judge Crossland or trial
9           counsel.  To the contrary, it shows that (1) Lisa McGuire freely
            entered into a plea bargain to admit one count in her own criminal
10          case, in exchange for dismissal of a second count and a promise of
            probation at the outset, and without any promise that she testify
11          truthfully at petitioner's trial, (2) petitioner's trial counsel fully and
            effectively cross-examined Lisa McGuire on the matter, and (3) the
12          jury was not left with any uncorrected perjurious testimony by
            McGuire.  That Judge Crossland took McGuire's plea and had
13          independent knowledge of it was of no consequence, and Judge
            Crossland did not possess any knowledge beyond that which
14          petitioner's trial counsel fully examined McGuire.  Contrary to
            petitioner's claim now, there was simply no false presentation of
15          any evidence, no ineffective assistance of counsel in failing to fully
            cross-examine on the matter, and no impropriety on the part of
16          Judge Crossland.

17   (Dkt. No. 29-4 at 21.)

18          Federal habeas review of alleged prosecutorial misconduct is limited to the issue

19   of whether the conduct violated due process.  See Darden v. Wainwright, 477 U.S. 168, 181

20   (1986);  Sassounian v. Roe, 230 F.3d 1097, 1106 (9th Cir. 2000); Thomas v. Borg, 74 F.3d 1571,

21   1576 (9th Cir. 1996).  Prosecutorial misconduct violates due process when it has a "substantial

22   and injurious effect or influence in determining the jury's verdict."  See Ortiz-Sandoval v.

23   Gomez, 81 F.3d 891, 899 (9th Cir. 1996) (quoting O'Neal v. McAninch, 513 U.S. 432, 443

24   (1995)).  A claimant must show "first that the prosecution engaged in improper conduct and

25   second that it was more probable than not that the prosecutor's conduct materially affected the

26   fairness of the trial."  United States v. Smith, 893 F.2d 1573, 1583 (9th Cir. 1990) (citation

9

1   omitted).  If left with "grave doubt" whether the error had substantial influence over the verdict, a

2   court must grant collateral relief.  <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 631 (1993);

3   <u>Ortiz-Sandoval</u>, 81 F.3d at 899.

4          The superior court's ruling is supported by the record.  Lisa McGuire testified

5   during the prosecution's case-in-chief that petitioner accidentally shot her while attempting to hit

6   the victim, Trujillo.  (RT 306-19.)  Ms. McGuire also testified that she was on probation during

7   this incident, and that she pled guilty to burglary based on her involvement in the incident.  (RT

8   306-07; 322.)  On cross-examination, defense counsel asked Ms. McGuire about the deal she

9   received, implying she had been offered a plea bargain in exchange for her testimony.  (RT 336.)

10  Ms. McGuire replied, "Excuse me, but I did not get no deal."  (RT 336.)  Ms. McGuire

11  confirmed she was not incarcerated in state prison.  (<u>Id</u>.)  The prosecution objected that the line

12  of questioning was argumentative, and stated "there's no evidence in front of this court that if

13  you are convicted of a burglary for the first time offense, you're gonna get prison."  (<u>Id</u>.)  The

14  judge called for a sidebar, where counsel and the judge had a discussion off the record and

15  outside the presence of the jury.  (<u>Id</u>.)

16         When cross-examination resumed, Ms. McGuire testified that she had been

17  charged with two criminal counts, one for attempted robbery and one for burglary, and the

18  district attorney offered to drop one of the counts in exchange for a guilty plea.  (RT 337.)  Ms.

19  McGuire denied the plea bargain included a condition that she testify against petitioner, and

20  stated she "came willingly to testify for the DA."  (RT 338.)

21         Petitioner has presented no evidence to the contrary.  In fact, the transcript of Ms.

22  McGuire's plea hearing, provided by petitioner, demonstrates that Ms. McGuire was offered a

23  plea based on the facts of the case, her age of 27 with no record, and "the fact that she was shot in

24  the stomach by a co-defendant inadvertently during this crime."  (Petitioner's Ex. J.)

25         Moreover, petitioner's claim that the prosecution misstated the law is baseless.

26  As noted by respondent, the sentencing judge has discretion, under California law, to grant

1  probation to a defendant convicted of burglary.  California Penal Code §§ 461, 462, 1203.  "The

2  trial judge's discretion in determining whether to grant probation is broad."  People v. Stuart, 156

3  Cal.App.4th 165, 178-79 (2007).  In the absence of a showing that the trial judge's sentence was

4  "irrational or arbitrary," the judge is "presumed to have acted to achieve legitimate sentencing

5  objections."  People v. Carmony, 33 Cal.4th 367, 376-77 (2004).  Ms. McGuire pled guilty to

6  burglary and was sentenced to probation.  (Petitioner's Ex. J at 29.)  Because the prosecution did

7  not misstate the law and Ms. McGuire was appropriately sentenced under California law, the

8  prosecutor did not engage in misconduct, and this claim has no merit.

9        Therefore, the state court's rejection of petitioner's second claim for relief was

10  neither contrary to, nor an unreasonable application of, controlling principles of United States

11  Supreme Court precedent.  The second claim for relief should be denied.

12        C.  Alleged Judicial Misconduct/Bias

13        Petitioner presses four claims of judicial misconduct.  The court will set forth the

14  general standards for evaluating claims of judicial misconduct and will specifically address

15  petitioner's claims thereafter.

16        There is a "presumption of honesty and integrity in those serving as adjudicators."

17  Withrow v. Larkin, 421 U.S. 35, 47 (1975).  A judge's remarks or opinions will not demonstrate

18  bias unless they "reveal such a high degree of favoritism or antagonism as to make fair judgment

19  impossible."  Liteky v. United States, 510 U.S. 540, 555 (1994).  On federal habeas corpus, the

20  question on a claim of judicial misconduct is "whether the state trial judge's behavior rendered

21  the trial so fundamentally unfair as to violate federal due process under the United States

22  Constitution."  Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995).  A verdict may be reversed

23  because of general judicial misconduct during trial only where there is "an extremely high level

24  of interference by the trial judge which creates a pervasive climate of partiality and unfairness."

25  Id. (internal citation omitted).

26        First, petitioner claims the judge knowingly permitted perjured testimony when

1    Lisa McGuire testified concerning her plea agreement, and that the trial judge failed to instruct

2    the jury when the prosecutor allegedly misstated the law.  However, this court has found that the

3    prosecution did not misstate the law, section B supra, and that Ms. McGuire did not provide

4    perjured testimony as to her plea bargain.  (Id.)  Therefore, it was unnecessary for the judge to

5    instruct the jury.  Accordingly, this claim has no merit and must be rejected.

6           Second, petitioner contends the trial judge conducted improper Marsden [4]

7    hearings.  (Pet. at 6A.)  Petitioner argues that defense counsel's performance during the Marsden

8    hearings was "alarmingly deficient," and petitioner claims the trial judge's efforts to "restate"

9    defense counsel's position were inaccurate, and that the trial judge "manufactured reasons to

10   deny" the Marsden motions to avoid the "inconvenience of starting a new trial."  (Dkt. No. 29-3

11   at 18-19.)  Respondent failed to address this claim.  Moreover, it appears petitioner failed to raise

12   this claim in state court.[5]  (Respondent's Exs. B, D, F, H & Dkt. No. 29-4 at 18-23.)

13   Accordingly, the court will review this claim de novo.  Nulph, 333 F.3d at 1056.

14          Petitioner provided copies of the reporter's transcripts from the two Marsden

15   hearings, consisting of 25 pages.  (Dkt. No. 29-4 at 86-113.)  However, petitioner did not set

16   forth specific statements to which he objects, nor point to specific cites in the Marsden hearing

17   transcripts.  Rather, his contentions are general.  (Dkt. Nos. 29-1 at 9; 29-3 at 18; Dkt. No. 37 at

18   11.)  Petitioner is required to state his claim with sufficient specificity.  Hendricks v. Vasquez,

19   908 F.2d 490, 491-92 (9th Cir. 1990); see Rule 2(c) of the Rules Governing Section 2254 Cases.

20          Nevertheless, review of the August 26, 1996 Marsden hearing transcript reveals

21   that the judge was asking questions of defense counsel in an effort to understand what counsel

22

23       [4] People v. Marsden, 2 Cal.3d 118, 84 Cal.Rptr. 156 (1970) (trial court must give
     defendant who moves to substitute appointed counsel opportunity to present argument or
24   evidence in support thereof).

25       [5] "An application for a writ of habeas corpus may be denied on the merits,
     notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the
26   State."  28 U.S.C. § 2254(b)(2).

1   was saying, to discern whether counsel had adequately prepared for trial, and was, indeed, ready

2   to go to trial.  (Dkt. No. 29-4 at 86-104.)  Nothing in the transcript suggests that the trial judge

3   was attempting to re-characterize defense counsel's responses or to force an unprepared defense

4   counsel to go to trial against his or his client's wishes in the interest of judicial economy.  Rather,

5   it appears that petitioner had a difference of opinion as to trial strategy and as to those witnesses

6   petitioner wanted defense counsel to call and those witnesses defense counsel thought should be

7   called.  Complaints over trial strategy are not appropriate grounds for appointing substitute

8   counsel.  See Schell v. Witek, 218 F.3d 1017, 1026 n.8 (9th Cir. 2000) (en banc) (quoting

9   Brookhart v. Janis, 384 U.S. 1, 8 (1966) (Harlan, J., dissenting in part)) ("[A] lawyer may

10  properly make a tactical determination of how to run a trial even in the face of his client's

11  incomprehension or even explicit disapproval.").

12          Petitioner's claims as to the September 9, 1996 Marsden hearing are similarly

13  unavailing.  (Dkt. No. 29-4 at 106-13.)  The trial judge did not engage in re-characterizing

14  defense counsel's statements, nor was there any indication the trial judge was "manufacturing

15  reasons to deny" petitioner's motion.  (Id.)  Rather, the denial was based on defense counsel's

16  sound reasons of trial tactics; that is, it would be unwise for defense counsel to seek to refute Ms.

17  McGuire's off-the-record *false* claims that petitioner was a child molester, or had AIDS, or that

18  Ms. McGuire had been pregnant when shot and lost the baby.  Such claims would risk

19  prejudicing petitioner more than impeaching Ms. McGuire.

20          Therefore, petitioner's claims that the Marsden hearings were improperly

21  conducted or that the trial judge was biased during the hearings are factually unfounded and

22  should be denied.

23          Third, petitioner contends the trial judge was subject to disqualification because

24  the judge "had personal knowledge of disputed facts;" that is, that the trial judge took Ms.

25  McGuire's plea and was therefore aware that she had avoided state prison.  However, petitioner

26  has not demonstrated that the plea was negotiated in exchange for McGuire's testimony at

petitioner's trial.  Indeed, Ms. McGuire testified to the contrary and the evidence presented by

petitioner fails to demonstrate otherwise.  Therefore, there was no disputed fact or disputed

evidence that would require the trial judge to disqualify herself.  In addition, the jury received

sufficient information to apprise it of the potential biases or motivations of Ms. McGuire through

defense counsel's cross-examination.  See United States v. Carr, 18 F.3d 738, 740 (9th Cir.

1994).  Petitioner has not demonstrated that the fact that the trial judge also took Ms. McGuire's

plea influenced in any way the manner in which the judge conducted the instant trial, nor is there

any other such evidence in the record.[6]  For all the above reasons, petitioner has failed to

demonstrate that the superior court's finding that the fact that the trial judge "took McGuire's

plea and had independent knowledge of it was of no consequence," and "did not possess any

knowledge beyond that which petitioner's trial counsel fully examined McGuire," was neither

contrary to, nor an unreasonable application of, controlling principles of United States Supreme

Court precedent.  This claim should also be denied.

Fourth, petitioner contends the trial judge's communication with the jury as to

whether a letter had been admitted into evidence constituted an ex parte communication with the

jury, requiring reversal in light of his allegations of judicial bias.  Petitioner argues his allegations

of judicial misconduct and bias accumulate to constitute structural error requiring reversal.

---

[6]  The superior court also found that:

> . . . it is often the case that a trial judge presides over a defendant's trial after taking guilty or nolo contendere pleas from codefendants; that does not give the trial judge any special knowledge that makes it likely that the judge will need to be a material witness at the defendant's trial.  Even if some matter that arose at a codefendant's plea hearing becomes an issue in the defendant's trial, the reporter's transcript for that hearing is available, and there is no need for the judge who presided over the hearing to become a material witness on the matter.

(Dkt. No. 29-4 at 22.)  Petitioner has not demonstrated that the trial judge had any extrajudicial information, let alone any extrajudicial information warranting disqualification.  See Liteky, 510 U.S. at 555 ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.")

1 Respondent counters that any error was harmless in that the response provided to the jury was

2 accurate and only addressed the evidentiary status of the letter, nothing substantive.  Respondent

3 further argues that any error had no substantial or injurious effect upon the verdict, citing <u>Brecht</u>,

4 507 U.S. at 619, because it related only to whether petitioner had threatened Ms. McGuire.  (Dkt.

5 No. 36 at 18.)

6       Petitioner raised this claim in his petition for writ of habeas corpus filed in the

7 Sacramento County Superior Court.  The superior court denied this claim on procedural grounds.

8 (Respondent's Ex. H at 2.)

9       The Sixth Amendment guarantees a defendant the right to be present, personally

10 or through counsel, when the court responds to jury questions.  <u>Rogers v. United States</u>, 422 U.S.

11 35, 38-39 (1975); <u>United States v. Barragan-Devis</u>, 133 F.3d 1287, 1289 (9th Cir. 1998).

12 However, the right to be present during all critical stages of the proceedings and to assistance of

13 counsel at all stages of the proceedings are subject to harmless error analysis.  <u>See</u> <u>Rushen v.</u>

14 <u>Spain</u>, 464 U.S. 114, 119 n.2 (1983).  The court in <u>Barragan-Devis</u> identified three factors to

15 evaluate whether the error is harmless:  (1) the probable effect of the message actually sent; (2)

16 the likelihood that the court would have sent a different message had it consulted with

17 petitioner's counsel prior to sending the message; and (3) whether any changes petitioner's

18 counsel might have obtained would have affected the verdict in any way.  <u>Barragan-Devis</u>, 133

19 F.3d at 1289 (citation omitted).

20       In the instant case, the court received the following question from the jury:

21 We, the jury in the above-entitled matter, request the following:
   We only have two handwritten letters; one written by Lisa
22 McGuire and another from William Bryan.  In court, a torn letter
   was sworn by the defense or prosecution that referred to as the first
23 letter she received while in prison.  We would like to have that
   letter if it was admitted as evidence.
24 Dated:  9/11/96                         /s/ Foreperson

25

26 (Clerk's Transcript ("CT") 162.)

1    The September 11, 1996 minute order reflects that "[t]he court responded in

2 writing that the letter was not admitted into evidence." (CT 162.)

3    This court finds the error was harmless. The probable effect of the message sent

4 was none, because the jury was not receiving any new information or new evidence to consider.

5 The message simply informed the jury that the letter mentioned in testimony was not admitted

6 into evidence, so there was no exhibit for them to review. It is unlikely that the court would have

7 sent a different message, even if the judge had consulted with petitioner's counsel. Petitioner

8 argues that had defense counsel been informed, he would have "moved the court to clarify for the

9 jury that it was the District Attorney [who] decided not to move the letter[] into evidence." (Dkt.

10 No. 29-3 at 22.) However, after deliberations have begun, that information is irrelevant as to

11 whether or not the letter actually was admitted into evidence. It is unlikely the trial judge would

12 have characterized the response in this way. What mattered to the jury was whether or not they

13 would be allowed to see the letter. Because the letter was not admitted into evidence, they would

14 not be reviewing that letter. This also satisfies the third factor because even if the judge had

15 characterized the response and informed the jury that it was the prosecution who decided not to

16 move the letter into evidence, it would not have changed the fact that the jury was not going to be

17 reviewing the letter. Because the jury would not be reviewing the letter, there could be no affect

18 on the verdict either way.

19    Although it was error for the judge to respond without consulting counsel, the

20 judge's response was correct and did nothing more than inform the jurors that the letter had not

21 been admitted into evidence. The judge did not add new instructions, repeat instructions, or

22 modify any instructions. The ex parte contact did not pertain to "any fact in controversy or any

23 law applicable to the case." Rushen, 464 U.S. at 121. In addition, as argued by respondent, the

24 letter was "tangential to the evidence of the offenses and related only to whether petitioner had

25 threatened McGuire." (Dkt. No. 36 at 26.) Therefore, the failure of the trial judge to consult

26 with counsel about this note was harmless error, and could not have had a substantial or injurious

1    effect upon the jury's verdict.  Brecht, 507 U.S. at 619.  Accordingly, this claim should be

2    denied.

3                        D.  Alleged Ineffective Assistance of Counsel

4                        Petitioner raises several claims of ineffective assistance of trial counsel:

5    (1) Failure to obtain and use letters written by McGuire;[7] (2) Failure to obtain 911 call and eye

6    witness; (3) Failure to subpoena Tracie Leann Cox; (4) Failure to obtain current photo of

7    petitioner; (5) Inadequate knowledge regarding peremptory challenges; (6) Biased conduct by

8    counsel; and (7) Failure to research and challenge prior convictions.[8]  Petitioner also alleges one

9    claim of ineffective assistance of appellate counsel, alleging appellate counsel was ineffective for

10   refusing to bring any ineffective assistance of trial counsel claims on direct appeal.

11                       All but subclaims (1), (2) and (8) were found to be untimely and successive and

12   were barred by In re Clark, 5 Cal.4th 750, 774-75 (1993).  (Respondent's Exs. D at 2 & H at 3,

13   5.)  Applying the two-part test for evaluating ineffective assistance of counsel claims set forth in

14   Strickland v. Washington, 466 U.S. 668 (1993), the state superior court rejected the claims on

15   August 6, 1999, as follows:

16                    . . . Petitioner's claims involve effectiveness of counsel and
                         access to discovery.

17
                         . . .
18
                            In this case, testimony against petitioner came from Mr. Trujillo,
19                       who was struck in the head, as well as from Ms. McGuire, who
                         was shot.  In addition, since police and other emergency personnel
20                       responded to the shooting, there was other evidence from the
                         scene.  Petitioner has not shown that a different outcome was
21                       probable.

22                          Petitioner's arguments also fail to establish that his counsel was
                         deficient.  First, as to the letters from Ms. McGuire, petitioner's
23                       counsel states that they would have been cumulative to other

24   ───────────────

           [7]  Although petitioner separates this claim into two separate claims (A) and (C) (Dkt. No.
25   29-1 at 10), they are essentially the same claim.

26         [8]  This claim is identified as petitioner's subclaim (D).  (Dkt. No. 29-1 at 10.)

                                                17

1          evidence.  The court's records indicate that petitioner's counsel
           located several witnesses on the same issue.  Counsel's decision to
2          forego producing the letters, therefore, would fall well within the
           range of tactical decision-making, not deficient representation.
3          (See Strickland, supra, 466 U.S. at 689 (there is a presumption that
           counsel's action "might be considered sound trial strategy").)
4
              Petitioner also states that counsel failed to investigate his prior
5          conviction in Case No. 64400.  The court's files for that case
           record an appearance by petitioner and his counsel, Kevin Clymo
6          of the public defender's office at judgment and sentencing.  The
           record reflects none of the statements petitioner reports.  In
7          addition, the transcript of change of plea in that case shows that
           petitioner was present with his attorney, Thomas Roehr of the
8          public defender's office.  A plea was entered based on dismissal of
           other charges.  The only sentence mentioned was to state prison.
9

10   (Respondent's Ex. D at 1-2.)

11          On February 4, 2002, with regard to petitioner's claim concerning the 911 tape

12   and the eyewitness, the state superior court stated:

13          difference between a "white" and a "light colored" station wagon is
            insignificant, requiring denial also under Bower, [38 Cal.3d 865
14          (1985) (involves matters outside the record and is not one that
            could have been raised on appeal).]

15

16   (Respondent's Ex. H at 3.)  As to trial counsel's failure to subpoena Tracie Leann Cox, the state

17   superior court stated:

18          petitioner admits that the testimony would only have been
            cumulative.  Further, petitioner fails to attach competent evidence
19          at all to support his claim.  Rather, he attaches only a report from a
            defense investigator, Larry Fink, stating what Cox had told him,
20          which is only hearsay.  The claim therefore also fails under [In re]
            Harris, [5 Cal.4th 813, 829 (1993).]
21
     (Respondent's Ex. H at 5.)
22
            The state superior court addressed petitioner's ineffective assistance claims
23
     concerning prior convictions as follows:
24
            [P]etitioner fails to show that prior counsel was ineffective
25          regarding the 1989 conviction, since the issue of whether a jury
            instruction should have been given could have been reached only
26          through a habeas corpus petition challenging that conviction,

which would have had to have been timely filed and not
procedurally barred.  Petitioner makes no showing that such a
petition could have been filed that would have been cognizable,
nor does petitioner set forth any facts or argument, or attach any
documentation, to show that such a claim would have been
successful in vacating the judgment for the 1989 conviction.  Thus,
the claim also fails under Bower, supra, . . . and In re Harris,
[supra]. . . .

(Respondent's Ex. H at 4.)

The Sixth Amendment guarantees the effective assistance of counsel.  The United

States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

Strickland, 466 U.S. at 668.  To support a claim of ineffective assistance of counsel, a petitioner

must first show that, considering all the circumstances, counsel's performance fell below an

objective standard of reasonableness.  Id. at 687-88.  After a petitioner identifies the acts or

omissions that are alleged not to have been the result of reasonable professional judgment, the

court must determine whether, in light of all the circumstances, the identified acts or omissions

were outside the wide range of professionally competent assistance.  Id. at 690; Wiggins v.

Smith, 539 U.S. 510, 521 (2003).

Second, a petitioner must establish that he was prejudiced by counsel's deficient

performance.  Strickland, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine

confidence in the outcome."  Id.; see also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224

F.3d 972, 981 (9th Cir. 2000).

In assessing an ineffective assistance of counsel claim "[t]here is a strong

presumption that counsel's performance falls within the wide range of professional assistance."

Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citation omitted).  Additionally, there is a

strong presumption that counsel "exercised acceptable professional judgment in all significant

decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citation omitted).

1      A reviewing court is not required to address the two parts of the <u>Strickland</u> test in

2  the order set forth therein.  <u>See Strickland</u>, at 697.  As the Court stated in <u>Strickland</u>:

3          In particular, a court need not determine whether counsel's
           performance was deficient before examining the prejudice suffered
4          by the defendant as a result of the alleged deficiencies.  The object
           of an ineffectiveness claim is not to grade counsel's performance.
5          If it is easier to dispose of an ineffectiveness claim on the ground
           of lack of sufficient prejudice, which we expect will often be so,
6          that course should be followed.  Courts should strive to ensure that
           ineffectiveness claims not become so burdensome to defense
7          counsel that the entire criminal justice system suffers as a result.

8  <u>Id</u>.

9      As to petitioner's first claim, both parties have provided defense counsel's

10  declaration in which he confirms that former counsel failed to provide defense counsel with

11  letters written by Lisa McGuire "in which she had written exculpatory statements regarding his

12  involvement in the crimes charged."  (Dkt. No. 29-4 at 47; Respondent's Ex. L.)  Defense

13  counsel states that he was "confusing the written statement which was introduced at trial with the

14  letters, which were received by [petitioner] while he was in jail."  (<u>Id</u>.)  Defense counsel confirms

15  that petitioner asked counsel to request a continuance to obtain the letters but counsel

16  "overruled" petitioner "because [he] felt the statements would be cumulative to the writing

17  introduced."  (<u>Id</u>.)

18      The determination that the letters would be cumulative is confirmed by the record.

19  Ms. McGuire was questioned about a letter allegedly exculpating petitioner.  (RT 323-25.)

20  Angelo Vitale, petitioner's former attorney, testified that during the bail hearing, Lisa McGuire

21  "stood up and said that she wanted [petitioner] out of custody, that he wasn't involved and that

22  he wasn't with her on the night that this incident occurred."  (RT 493.)  Vitale testified that

23  McGuire was sitting with a woman named Amy and two relatives or friends of petitioner.  (RT

24  493.)  Outside of court on the day of the bail hearing, outside of anyone's earshot, Ms. McGuire

25  told Vitale that petitioner wasn't with her "in that house," that petitioner "should not be

26  arrested," and "she didn't know why he was in custody."  (RT 494-95.)  Finally, Vitale testified

that Ms. McGuire pled the Fifth Amendment at petitioner's preliminary hearing. (RT 495.)

Three other witnesses testified to statements McGuire made that petitioner was not guilty. (RT

475, 482 & 488.) Because there was evidence adduced at trial that Ms. McGuire had, on

multiple occasions, claimed petitioner was not present during the incident, the letters defense

counsel failed to obtain were cumulative and petitioner was not prejudiced by counsel's failure to

obtain and seek their admission at trial.

Petitioner's ineffective assistance of counsel claims (2) through (6) should be

denied as petitioner has failed to demonstrate prejudice under Strickland. Henry Trujillo, the

other victim, identified petitioner as the shooter. (RT 235-36.) Frank J. Cabral identified

petitioner as the man who walked out of the house the night of the incident, shortly after

gunshots were heard. (RT 186-87.) Although Ms. McGuire was impeached, supra, her

testimony at trial concerning petitioner's involvement was consistent with the testimony of

Trujillo, Frank Cabral and Julia Cabral, as well as Ms. McGuire's own statements the night she

was shot. (RT 140-42, 161-68, 184-89, 231-37.) Ms. McGuire testified that the allegedly

exculpatory letter was written in front of petitioner's relatives and that she "wrote that because

[she] was being threatened." (RT 324.) Ms. McGuire testified that petitioner's sister-in-law

Amy told McGuire what to write. (RT 326.) In light of the evidence adduced at trial, petitioner

has failed to demonstrate that admission of the 911 call, the proposed testimony of Frank

Cabral's aunt and Tracie Leann Cox,[9] and the submission of a more current photograph[10] of

---

[9] Petitioner has again failed to present a declaration from Ms. Cox, so the court is unable to evaluate the impact, if any, of her potential testimony herein. It is clear from the record, however, that Ms. Cox had no personal knowledge of the events that took place the night of August 21, 1995. Petitioner states he needs an evidentiary hearing to determine whether defense counsel subpoenaed Tracie Cox or whether or not she was available for trial as a defense witness. (Dkt. No. 37 at 16.) Additionally, petitioner asserts that Ms. Cox allegedly would have testified that the prosecutor had a sexual relationship with Lisa McGuire. However, during the motion for new trial, the prosecution denied having "any sexual relationship with Lisa McGuire, a known prostitute," and stated his "information is she was dealing with people that . . . have the AIDS virus and actually did have full blown AIDS." (RT 818.) The prosecution further stated that he "had no type of physical contact whatsoever with Ms. McGuire, except for at one time when she

petitioner would have changed the jury's verdict.  The record reflects the jury focused on the

testimony of Henry Trujillo, as the jury requested read back of Henry Trujillo's testimony and of

Detective Rye's testimony recounting the taking of Trujillo's statement in the hospital by Rye.

(CT 274.)  None of the alleged failings of defense counsel had anything to do with Henry Trujillo

or his testimony.

Petitioner's claim concerning defense counsel's failure to exercise peremptories is

not supported by competent evidence and also fails based on petitioner's inability to demonstrate

Strickland prejudice as set forth above.  Petitioner's claims concerning defense counsel's alleged

"biased conduct" are similarly unsupported by the record and unavailing.  Indeed, during the

August 26, 1996 Marsden hearing, the trial judge remarked;

> I believe that [defense counsel] is competently representing you,
> that he has properly represented you and that the differences that
> you may have relate to strategy issues, which your attorney is the
> appropriate person to make the decision about.

(Dkt. No. 29-4 at 103.)  Many of petitioner's complaints about defense counsel's particular

failures to act stemmed from tactical or strategical decisions.  Defense counsel "manages the

lawsuit and has the final say in all but a few matters of trial strategy."  Faretta v. California, 422

U.S. 806, 812 (1975).  In this regard, "a lawyer may properly make a tactical determination of

how to run a trial in the face of his client's incomprehension or even explicit disapproval."

Brookhart, 384 U.S. at 8.  Defense counsel's use of colorful or objectionable adjectives to

_____

was in [his] office, [he] did rifle through a couple of notes that she had in a wallet in regards to
the phone number of somebody that she needed for a ride home, but besides that, [he] had no
physical contact with Ms. McGuire." (RT 818.)  Petitioner has provided no evidence to refute
the prosecution's denial.  The prosecution's statement, on the record, is sufficient to demonstrate
that defense counsel's failure to subpoena Ms. Cox may have been intentional because defense
counsel did not believe the proposed testimony.  Moreover, Ms. Cox's testimony would not be
needed to impeach Ms. McGuire as there was other impeachment evidence adduced at trial, as
discussed supra.

[10]  Donald J. Croquette testified that petitioner looked different at trial than he did in
1995.  (RT 303.)  The trial court properly found the photograph was probative on the issue of
identification.  (RT 450.)

22

1  describe witnesses does not constitute ineffective assistance of counsel.  For all of the above

2  reasons, petitioner's subclaims (2) through (6) should be denied.

3          The court turns now to petitioner's claim that defense counsel was ineffective

4  based on his failure to research and challenge petitioner's prior convictions.  Petitioner contends

5  that because ineffective assistance of counsel resulted in his 1982 and 1989 convictions, his prior

6  convictions fall under an exception to Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394

7  (2001), that would have allowed defense counsel to successfully challenge his prior convictions.

8  Petitioner is mistaken.

9          In Lackawanna, the Supreme Court held that where, as here, a petitioner's state

10  court conviction was later used to enhance a criminal sentence, "the defendant generally may not

11  challenge the enhanced sentence through a petition under § 2254 on the ground that the prior

12  conviction was unconstitutionally obtained."  Lackawanna, 532 U.S. at 403-04.  The only

13  exception to this rule is a challenge to a prior conviction that was obtained without the benefit of

14  counsel in violation of the Sixth Amendment.  Id., 532 U.S. at 404.  Here, petitioner is claiming

15  he suffered ineffective assistance of counsel when he sustained his 1982 and 1989 convictions,

16  which presumes he had counsel.  Because there is no evidence that petitioner was proceeding

17  without counsel in connection with his prior convictions, the "failure to appoint counsel"

18  exception does not apply and he is precluded from collaterally attacking those convictions

19  through a § 2254 petition.  See id. at 406.  Therefore, petitioner's subclaim (7) should also be

20  denied.

21          Finally, petitioner contends his appellate counsel was ineffective because

22  appellate counsel refused to bring any claims of ineffective assistance of trial counsel in

23  petitioner's direct appeal.  Because petitioner has failed to demonstrate trial counsel was

24  ineffective, appellate counsel could not be ineffective for failing to raise such claims on appeal.

25          Despite the numerous assignments of alleged error by his attorneys, the record

26  reflects no cognizable prejudice to petitioner from anything of which he complains.  There was

1   sufficient evidence to support the verdict against petitioner and petitioner has not shown any

2   reasonable probability of a different outcome at his trial.  The state courts' rejection of

3   petitioner's claims of ineffective assistance of counsel were neither contrary to, nor an

4   unreasonable application of, clearly established federal law.  Accordingly, these claims should be

5   denied.

6            E.  Alleged Jury Instruction Errors

7            Petitioner raises three claims of jury instruction error.  The court analyzes these

8   claims in turn below.

9            A challenge to jury instructions does not generally state a federal constitutional

10   claim.  See Middleton v. Cupp, 768 F.2d at 1085 (citation omitted); Gutierrez v. Griggs, 695

11   F.2d 1195, 1197 (9th Cir. 1983).  Habeas corpus is unavailable for alleged error in the

12   interpretation or application of state law.  Middleton v. Cupp, 768 F.2d at 1085; see also Lincoln

13   v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987).  In order to warrant federal habeas relief, challenged

14   jury instructions "cannot be merely 'undesirable, erroneous, or even "universally condemned,"'

15   but must violate some due process right guaranteed by the fourteenth amendment."  Prantil v.

16   California, 843 F.2d 314, 317 (1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  To

17   prevail on such a claim petitioner must demonstrate "that an erroneous instruction 'so infected

18   the entire trial that the resulting conviction violates due process.'"  Prantil, 843 F.2d at 317

19   (quoting Darnell v. Swinney, 823 F.2d 299, 301 (9th Cir. 1987)); see also Estelle, 502 U.S. at 72.

20   The analysis for determining whether a trial is "so infected with unfairness" as to rise to the level

21   of a due process violation is similar to the analysis used in determining, under Brecht, 507 U.S. at

22   623, whether an error had "a substantial and injurious effect" on the outcome.  See McKinney v.

23   Rees, 993 F.2d 1378, 1385 (9th Cir. 1993).

24            In making its determination, this court must evaluate the challenged jury

25   instructions "'in the context of the overall charge to the jury as a component of the entire trial

26   process.'"  Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir.

1984)).  The United States Supreme Court has cautioned that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 437 (2004).  Further, in reviewing an allegedly ambiguous instruction, the court "must inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Estelle, 502 U.S. at 72 (quoting Boyde v. California, 494 U.S. 370, 380 (1990)); see also United States v. Smith, 520 F.3d 1097, 1102 (9th Cir. 2008).  Where the challenge is to a refusal or failure to give an instruction, the petitioner's burden is "especially heavy," because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977); see also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

The burden upon petitioner is greater yet in a situation where he claims that the trial court did not give an instruction sua sponte.  To the extent that petitioner rests his claim on a duty to give an instruction sua sponte under rules of state law, petitioner has stated no federal claim.  Indeed, in the failure to give a lesser included offense instruction context, the Ninth Circuit has held in non-capital cases that the failure to give the instruction states no federal claim whatsoever.  James v. Reese, 546 F.2d 325, 327 (9th Cir. 1976).  Therefore, in order to violate due process, the impact on the proceeding from failure to give an instruction sua sponte must be of a substantial magnitude.

### i. Transferred Intent Jury Instruction

Petitioner contends that the modified version of CALJIC No. 9.10 that erroneously applied the doctrine of transferred intent to the crime of assault, a general intent crime, prejudiced him, and that if the court removed CALJIC No. 9.10 from the jury instructions, there would be insufficient evidence to support his conviction for two assaults.  (Am. Pet. at 13.) Respondent contends that petitioner has failed to present a federal question as the state court determined California law on the crime of assault.  (Dkt. No. 36 at 40.)  Respondent also argues

1   that the decision of the Court of Appeal finding that the giving of CALJIC No. 9.10 was harmless

2   is entitled to deference.  (Dkt. No. 36 at 40-41.)

3            The last reasoned rejection of this claim is the decision of the California Court of

4   Appeal for the Third Appellate District on petitioner's direct appeal.  (Respondent's Ex. B.)  The

5   state court addressed this claim as follows:

6            The jury convicted [petitioner] of assaulting both Trujillo and
         McGuire.  He does not challenge the conviction for the assault of
7         Trujillo.  He challenges the jury finding he assaulted McGuire on
         two grounds:  instructional error and sufficiency of the evidence.
8         We begin with a description of the fundamental principles
         involving the requisite intent to assault.
9
          "Assault is a general intent crime . . . .  With assault, conviction
10        does not depend upon the defendant's specific intentions beyond
         the act itself as long as the conduct constituting the assault is likely
11        to result in a battery . . . .  Assault thus lies on a definitional, not
         merely a factual, continuum of conduct that describes its essential
12        relation to battery:  An assault is an incipient or inchoate battery; a
         battery is a consummated assault. . . .  This infrangible nexus
13        means that once the violent-injury-producing course of conduct
         begins, untoward consequences will naturally and proximately
14        follow."  (*People v. Colantuono* (1994) 7 Cal.4th 206, 215-217.)

15        "Considered from this perspective, it is clear that the question of
         intent for assault is determined by the character of the defendant's
16        willful conduct considered in conjunction with its direct and
         probable consequences.  If one commits an act that by its nature
17        will likely result in physical force on another, the particular
         intention of committing a battery is thereby subsumed.  Since the
18        law seeks to prevent such harm irrespective of any actual purpose
         to cause it, a general criminal intent or willingness to commit the
19        act satisfies the mens rea requirement for assault."  (*Id.* at p. 217.)
         Hence, "for assault, as with any general intent crime, the nature of
20        the defendant's *present willful conduct* alone suffices to establish
         the necessary mental state without inquiry as to an intent to cause
21        further consequences. . . .  The pivotal question is whether the
         defendant intended to commit an act likely to result in such
22        physical force, not whether he or she intended a specific harm.
         [Citation.]  Because the nature of the assaultive conduct itself
23        contemplates physical force or 'injury,' a general intent to attempt
         to commit the violence is sufficient to establish the crime."  (*Id.* at
24        pp. 217, 218, emphasis in original.)

25        [Petitioner] contends the jury was improperly instructed on the
         inapplicable legal fiction of transferred intent as that doctrine is
26        embodied in CALJIC 9.10.  The jury was instructed:  "Where one

26

attempts to assault a certain person with a firearm, but by mistake or inadvertence assaults a different person, the crime, if any, so committed is the same as though the person originally intended to be assaulted had been assaulted."

In *People v. Scott* (1996) 14 Cal.4th 544, the California Supreme Court recapped the history of the development of the common law doctrine of transferred intent. We need not repeat the Court's thoughtful summary. (*Id.* at pp. 549-552.) Suffice it to say, the Court recognized that "the notion of creating a whole crime by 'transferring' a defendant's intent from the object of his assault to the victim of his criminal act is . . . a 'bare-faced' legal fiction." (*Id.* at p. 550.) "Contrary to what its name implies, the transferred intent doctrine does not refer to any actual intent that is capable of being 'used up' once it is employed to convict a defendant of a specific intent crime against the intended victim. . . . Rather, as applied here, it connotes a *policy* – that a defendant who shoots [at] an intended victim with intent to kill but misses and hits a bystander instead should be subject to the same criminal liability that would have been imposed had he hit his intended mark." (*Id.* at pp. 550-551, italics in original.)

*Scott*, as many of the key cases involving the doctrine of transferred intent, involved specific intent crimes – murder and attempted murder. (*People v. Calderon* (1991) 232 Cal.App.3d 930; *People v. Czahara* (1988) 203 Cal.App.3d 1468; *People v. Birreuta* (1984) 162 Cal.App.3d 454.) *Scott* was a classic "bad aim" case; that is, the defendant intended to shoot one victim, but instead accidentally shot another. The Court upheld the jury verdict convicting defendant of the murder of the unintended victim and the attempted murder of the intended victim. "[B]ecause defendants shot at one person with an intent to kill, missed him, and killed a bystander instead, they may be held accountable for a crime of the same seriousness as the one they would have committed had they hit their intended target." (*Id.* at p. 553.) The Court would not address the more difficult question raised in *People v. Czahara, supra*, 203 Cal.App.3d 1468 and *People v. Birreuta, supra,* 162 Cal.App.3d 454, as to whether the doctrine of transferred intent is properly applied to find the mens rea for murder and attempted murder or multiple murders when the fatal shooting involves both an intended and unintended victim. (*Id.* at p. 552.)

We do not find any of the murder or attempted murder cases, whether the victims were intended or unintended, dispositive because assault, unlike murder, is a general intent crime. *People v. Lee* (1994) 28 Cal.App.4th 1724, recognized this crucial distinction. "[A] defendant need not intend to strike any particular person to be guilty of an assault, and it is irrelevant whether the defendant strikes his intended victim or another person. It follows that the doctrine of transferred intent does not apply at all in an

27

assault case; there is no specific intent to transfer." (*Id.* at p. 1737.)

The defendant in *Lee* attacked the same jury instruction at issue here, CALJIC No. 9.10.  The court found the instruction harmless. "CALJIC No. 9.10 does not tell a jury that a defendant's intent to assault one person may be transferred to some other person. Rather, read in conjunction with CALJIC No. 9.00, CALJIC No. 9.10 clarifies the principle that a defendant is not exculpated from criminal liability for assaulting an unintended victim if he intended to commit a successfully completed act, such as firing a gun, the direct, natural, and probable consequence of which applied physical force upon or injury to another.  The instruction removes the jury's focus from considering whom the defendant intended to injure, and directs the jury to consider whether the defendant had the general criminal intent to commit the assaultive act." (*Lee, supra,* 28 Cal.App.4th at p. 1738, fn. omitted.)

The law is clear that [petitioner] did not have to intend to injure McGuire to be guilty of assault.  His assaultive act toward Trujillo was sufficient.  That which distinguishes this case from those above is that [petitioner] contends he did not intend to commit the act of shooting.  While he concedes he assaulted Trujillo by striking him with the gun, he argues he did not intend the gun to discharge.  He argues that recklessness in striking his victim with a loaded gun does not constitute the requisite general intent for assault.

*People v. Tran* (1996) 47 Cal.App.4th 253 offers an apt analogy. Armed with a knife, defendant chased a father.  The father was holding his baby.  Defendant in *Tran*, like the defendant here, challenged his conviction of assaulting the bystander, the baby. Rejecting his contention, the court wrote: "[D]efendant's act of chasing [the father] and the baby and threatening them with a long knife demonstrates a willful attempt to use physical force against the victims he was pursuing.  It is of no merit to insist that he really intended no harm to the baby. . . .  We read *Colantuono* to mean that an intent to do an act which will injure any reasonably foreseeable person is a sufficient intent for an assault charge. [Petitioner] need not have specifically intended to injury baby Jackson; chasing [the father] (who was carrying Jackson) and wielding a large knife conveyed an intent to cause injury with the knife.  It is not reasonable to insist that defendant desired only to injure the father, and thus was not liable for an assault on the son. Surely a knife attack on the father could foreseeably have wounded the baby." (*Id.* at pp. 261-262.)

Similarly, we conclude that striking someone with a loaded firearm evidences a general intent to do an act which will injure any reasonably foreseeable person.  While we are careful not to supplant criminal intent with negligence principles of foreseeability, we must consider [petitioner's] willful conduct "in

28

conjunction with its direct and probable consequences." (*People v. Colantuono, supra,* 7 Cal.4th at p. 217.)  As the Supreme Court instructs, "If one commits an act that by its nature will likely result in physical force on another, the particular intention of committing a battery is thereby subsumed." (*Ibid.*)  [Petitioner] clearly intended to engage in an act where one battery, and maybe two, were sure to occur.  Like the court in *Tran* we find [petitioner's] willful act more than sufficient to support the jury's finding of assault of McGuire as well as Trujillo.  It is of no consequence that he did not really intend to shoot and injure McGuire.

(Respondent's Ex. B at 3-8.)

Put another way, because the doctrine of transferred intent does not apply to assault, a general intent crime, it was error for the trial court to instruct the jury with CALJIC No. 9.10.  However, the error was harmless under California state law because in order to prove assault, the prosecution must prove the perpetrator performed an act that injured the victim; there is no requirement to prove the perpetrator intended to injure the victim.  See CALJIC No. 9.02; CT 220.

In order to grant habeas relief where a state court has determined that a constitutional error was harmless, a reviewing court must determine:  (1) that the state court's decision was "contrary to" or an "unreasonable application" of Supreme Court harmless error precedent, and (2) that the petitioner suffered prejudice under Brecht from the constitutional error.  Inthavong v. LaMarque, 420 F.3d 1055, 1059 (9th Cir. 2005), cert. denied, 547 U.S. 1059 (2006); see also Mitchell v. Esparza, 540 U.S. 12, 17-18 (2003) (when a state court determines that a constitutional error is harmless, a federal court may not award habeas relief under § 2254 unless that harmlessness determination itself was unreasonable).  Both of these tests must be satisfied before relief can be granted.  Inthavong, 420 F.3d at 1061.  On habeas review, the harmless error standard set forth in Brecht applies to jury instructions that omit an element of the crime.  California v. Roy, 519 U.S. 2, 4-6 (1996); Evanchyk v. Stewart, 340 F.3d 933, 941 (9th Cir. 2003).  As explained above, under Brecht a petitioner is not entitled to habeas relief unless he can establish that a trial error "had a substantial or injurious effect or influence in determining

1  the jury's verdict." Brecht, 507 U.S. at 637.

2          Contrary to petitioner's arguments in this regard, there is no evidence that the jury

3  found, or could have found, that he was guilty of assault on McGuire based solely on the

4  erroneous jury instruction.  The jury was properly instructed on the charge of assault (CT 220),

5  the elements of assault (CT 221), the definition of "willful and unlawful act," (CT 222), and were

6  also instructed with CALJIC 9.01:

7          A necessary element of an assault is that the person committing
        the assault have the present ability to apply physical force to the
8          person of another.  This means that at the time of the act that by its
        nature would probably and directly result in the application of
9          physical force upon the person of another, the perpetrator of the act
        must have the physical means to accomplish such a result.  If there
10        is such an ability this element exists even if there is no injury.

11  (CT 223.)  The information was read to the jury, informing them that petitioner was charged with

12  assault on Henry Trujillo (Count 2) and on Lisa McGuire (Count 3), (CT 193-94), and the jury

13  returned separate verdicts for Counts 2 and 3.  (CT 273-74.)

14          Reviewing the jury instructions as a whole, this court cannot find that the use of

15  CALJIC No. 9.10 resulted in a constitutional violation.  See 28 U.S.C. § 2254(d)(1); Estelle, 502

16  U.S. at 75 (denying relief where a challenged jury instruction did not "so infus[e] the trial with

17  unfairness as to deny due process of law"); Spivey v. Rocha, 194 F.3d 971, 976-77 (9th Cir.

18  1999).  The decision of the state courts that any error in the giving of CALJIC No. 9.10 was

19  harmless is not contrary to, or an unreasonable application of, Brecht.  Accordingly, petitioner is

20  not entitled to relief on this claim.

21          Within this claim, petitioner also argues there was insufficient evidence to find

22  him guilty of assault of McGuire.  The state court rejected this claim as follows:

23          Like the court in Tran we find [petitioner's] willful act more than
        sufficient to support the jury's finding of assault of McGuire as
24          well as Trujillo.  It is of no consequence that he did not really
        intend to shoot and injure McGuire.

25

26  (Respondent's Ex. B at 8.)

1    There is sufficient evidence to support a conviction if, "after viewing the evidence

2    in the light most favorable to the prosecution, any rational trier of fact could have found the

3    essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307,

4    319 (1979); see also Juan H. v. Allen, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir. 2005).

5    Viewing the evidence in the light most favorable to the verdict, and for the

6    reasons expressed by the state appellate court, there was sufficient evidence from which a

7    reasonable trier of fact could have found beyond a reasonable doubt that petitioner assaulted

8    McGuire.  There was evidence that petitioner went to Trujillo's home with a loaded weapon.

9    Both Trujillo and McGuire testified that petitioner pointed the weapon at Trujillo and hit Trujillo

10   over the head with the weapon.  Both testified that petitioner shot McGuire, although it was

11   inadvertent.  Petitioner's arguments that he cannot be convicted of assault based on an

12   inadvertent act are unavailing under California law.  Because Ms. McGuire was in close

13   proximity to petitioner and Trujillo, petitioner's acts of bringing a loaded weapon into Trujillo's

14   home and striking Trujillo on the head were sufficient to demonstrate the natural and probable

15   consequence that the gun might discharge, whether or not petitioner intended to shoot McGuire.

16   For example, if the shot had hit one of the people sleeping on the couch, petitioner would have

17   been guilty of assault on that person as well as Trujillo.  Accordingly, the conclusion of the state

18   court that sufficient evidence supported the jury's true finding on the assault of McGuire is not

19   contrary to federal law and may not be set aside.

20                    ii.  Failure to Instruct on Claim-of-Right

21   Petitioner argues that the prosecution's theory of the case was that petitioner was

22   sold fake drugs by Trujillo and petitioner returned to Trujillo's home to recover the funds

23   wrongfully taken by Trujillo.  (Dkt. No. 29-1 at 13.)  Petitioner contends that under this theory,

24   petitioner's only motivation was to seek recompense for his loss and therefore petitioner lacked

25   the intent to commit larceny or burglary.  (Id.)  Therefore, petitioner argues, the court should

26   have instructed the jury on a claim-of-right defense as petitioner was attempting to reclaim

property wrongfully taken from him.  (Dkt. No. 29-3 at 51.)  Respondent counters that petitioner

did not have a good faith belief he was entitled to take the victim's television but that, in any

event, this jury instruction conflicted with petitioner's alibi defense; therefore, the court could not

instruct the jury as to a claim-of-right defense.

        The last reasoned rejection of this claim is the decision of the California Court of

Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

this claim as follows:

> [Petitioner] asserts the trial court erred by failing to instruct sua
> sponte on a claim-of-right defense.  "A defendant who acts under
> the subjective belief that he or she has a lawful claim on property
> lacks the required felonious intent to steal."  (*People v. Romo*
> (1990) 220 Cal.App.3d 514, 518.)  [Petitioner], although failing to
> mention this theory at trial or to request any instructions thereon,
> now maintains he entered the victim's house to take the television
> for the money he lost in the drug deal.  He loses again.
>
> "[A] trial court is not required to instruct on a claim-of-right
> defense unless there is evidence to support an inference that
> [defendant] acted with a subjective belief he or she had a lawful
> claim on the property."  (*Id*. at p. 519, original emphasis.)  In
> *Romo*, the court of appeal upheld the trial court's refusal to give a
> claim-of-right instruction at the defendant's request because he
> offered no evidence suggesting he acted upon a belief that he had a
> bona fide claim to the pipe he took from his neighbor.  The court
> found that the only evidence presented suggested the defendant
> "acted to settle the score."  (*Id*. at p. 520.)
>
> [Petitioner's] position is even weaker here.  The only evidence
> offered at trial was McGuire's suggestion to [petitioner] to take the
> television and [petitioner's] demand of Trujillo to unplug it before
> striking him with the firearm.  The inference [petitioner] suggests
> we draw from this evidence is far too attenuated to trigger a sua
> sponte obligation to instruct.  The victim was the middleman in an
> illegal drug transaction.  The dealer, not the victim, swindled
> [petitioner] and there is absolutely no evidence in this record to
> suggest [petitioner] had a good faith belief he was entitled to
> confiscate the victim's television.  Rather, like the defendant in
> *Romo*, he was merely acting to settle the score.
>
> Additionally, a trial court does not have a sua sponte obligation
> to instruct on a theory at odds with the defense presented at trial.
> [Petitioner] presented an alibi defense.  Hence, even if there was
> evidence from which an inference of a claim-of-right defense could
> be drawn, the trial court would not be at liberty to instruct on it and

1    thereby undermine the defense presented at trial.

2    (Respondent's Ex. B at 8-10.)

3          As found by the state court, this jury instruction was inconsistent with petitioner's

4    defense that he did not commit any of the charged unlawful acts because he had an alibi.  See

5    Butcher v. Marquez, 758 F.2d 373, 377 (9th Cir. 1985) (defense counsel "need not request

6    instructions inconsistent with its trial theory").  In addition, petitioner fails to point to any

7    evidence that he committed the acts based on a good faith belief he was entitled to take Trujillo's

8    television.  Under the circumstances of this case, the decision of the state courts rejecting this

9    claim is not unreasonable.  Accordingly, petitioner is not entitled to relief.

10                    iii.  Improper Reasonable Doubt Jury Instruction

11          In ground 11, petitioner alleges that the jury was improperly instructed as to the

12   reasonable doubt standard (CALJIC 2.90).  (Am. Pet. at 14.)  The California Court of Appeal for

13   the Third Appellate District summarily rejected this claim on petitioner's direct appeal, citing

14   People v. Light, 44 Cal.App.4th 879, 884-89 (1996); and People v. Torres, 43 Cal.App.4th 1073,

15   1077-78 (1996).  (Respondent's Ex. B at 16.)  The version of CALJIC 2.90 used at trial is

16   constitutionally sufficient.  Lisenbee v. Henry, 166 F.3d 997 (9th Cir. 1999).  Therefore, the

17   California Court of Appeal's rejection of petitioner's claim regarding the trial court's definition

18   of reasonable doubt is not contrary to clearly established federal law, as determined by the

19   Supreme Court of the United States.

20          F.  Alleged Sentencing Errors

21          Petitioner raises three claims of alleged sentencing errors.  The court analyzes

22   each of these claims in turn below.

23          Habeas corpus relief is unavailable for alleged errors in the interpretation or

24   application of state sentencing laws by either a state trial court or a state appellate court.

25   Hendricks v. Zenon, 993 F.2d 664, 674 (9th Cir. 1993).  So long as a state sentence "is not based

26   on any proscribed federal grounds such as being cruel and unusual, racially or ethnically

motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of state concern." Makal v. State of Arizona, 544 F.2d 1030, 1035 (9th Cir. 1976). The Ninth Circuit has specifically refused to consider state law errors in the application of state sentencing law. See, e.g., Miller v. Vasquez, 868 F.2d 1116 (9th Cir. 1989). In Miller, the court refused to examine the state court's determination that a defendant's prior conviction was for a "serious felony" within the meaning of the state statutes governing sentence enhancements. Id. at 1118-19. The court did not reach the merits of the Miller petitioner's claim, stating that federal habeas relief is not available for alleged errors in interpreting and applying state law. Id. (quoting Middleton v. Cupp, 768 F.2d at 1085).

In Estelle v. McGuire, 502 U.S. at 62, the Supreme Court reiterated the standard of review for a federal habeas court. It held that "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." Id. at 65. The Court emphasized that "federal habeas corpus relief does not lie for error in state law." Id. (citing Lewis v. Jeffers, 497 U.S. 764 (1990), and Pulley v. Harris, 465 U.S. 37, 41 (1984)). The court further noted that the standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)." Estelle, 502 U.S. at 67.

i. Factual Findings for Prior Conviction Used as A Strike for Sentencing

In claim 8, petitioner contends that the jury failed to make the factual finding that petitioner's prior conviction for burglary involved a dwelling, residence or specific type of burglary to demonstrate the conviction was a "serious" felony as required to qualify as a strike under California's three strikes law. (Am. Pet. at 13-14.) Petitioner contends this deficiency violated Apprendi v. New Jersey, 530 U.S. 466 (2000), and United States v. Booker, 543 U.S. 220 (2004.) Respondent counters that this issue is a matter of state law, not federal due process, and the California Court of Appeal decision that the "state's rules for finding the truth of the prior conviction allegations were met," demonstrates that the trial court followed state law. (Dkt.

No. 36 at 39.)

The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's initial appeal.  The state court addressed this claim as follows:

> [Petitioner] urges us to vacate the enhancement and strike based on his prior burglary conviction because the jury in this case did not make an express finding that the burglary was in the first degree thereby qualifying it as a serious felony under the three strikes law.  He relies on section 1157 of the Penal Code which provides:  "'Whenever a defendant is convicted of a crime or attempt to commit a crime which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find the degree of the crime or attempted crime of which he is guilty.  Upon the failure of the jury or the court to so determine, the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree.'"  (*In re Birdwell* (1996) 50 Cal.App.4th 926, 928.)

> Section 1157 protects a criminal defendant's right to have a jury determine his culpability and imposes a stringent penalty on a prosecutor who fails to request specific findings:  the defendant is deemed guilty of the crime of the lesser degree.  The same is not true with a finding of a prior conviction under section 1158.  Penal Code section 1158 provides:  "Whenever the fact of a previous conviction of another offense is charged in an accusatory pleading, and the defendant is found guilty of the offense with which he is charged, the jury, or the judge if a jury trial is waived must . . . find whether or not he has suffered such previous conviction."  Before section 1158 comes into play, the judge or jury in the underlying trial has already made an express finding of the degree of the crime defendant committed.  Here, the abstract of judgment clearly indicates [petitioner] was convicted of first degree burglary.  Pursuant to section 1158, the jury found he had suffered the previous conviction.  The courts have been loathe to apply the literal terms of section 1157 in those circumstances in which form trumped substance and justice suffered.  We see no reason in law or in policy to expand section 1157 to encompass section 1158 findings on prior convictions.

(Respondent's Ex. B at 10-11.)

The record reflects that the jury was read the following strike allegations:

> It is further alleged that said defendant, William Joseph Bryan, was on or about the 26th day of October, 1982, in the Superior Court of the State of California, for the County of Sacramento,

1           convicted of the crime of burglary, in violation of section 459 of
the Penal Code, a serious felony, within the meaning of section

2           667(a) of the Penal Code.

3               It is further alleged that because the defendant, William Joseph
Bryan, has suffered the above list of convictions, he comes within

4           the provisions of section 667(b) through (i) of the Penal Code and
section 1170.12 of the Penal Code.

5

6  (RT 783-84.)

7          The trial judge instructed the jury as follows:

8               It is alleged in the Information that prior to the commission of the
crimes charged, the Defendant was, in the State of California, in

9           the County of Ventura and Sacramento[,] convicted of serious
felonies, namely, burglary of an inhabited dwelling house, and

10          kidnapping within the meaning of Penal Code Section 1170.12,
667(b) through (i) inclusive and 667(a) and 1192.7.

11

               Burglary of an inhabited dwelling house is the same as first

12         degree burglary or burglary of a residence.

13              You are now required to determine whether said allegations are
true or untrue.  In considering this question, you must consider

14         each of the prior convictions separately.

15              Burglary of an inhabited dwelling house and kidnapping are
serious felonies, within the meaning of Penal Code Sections

16         1170.12, 6679b) through (i) inclusive and 667(a) and 1192.7.

17  (RT 786-87.)

18          Petitioner's claim relies on the Supreme Court decision in United States v.

19  Booker, 543 U.S. at 220.  In Booker, the Supreme Court reaffirmed its holding in Apprendi,[11]

20  and applied its holding in Blakely v. Washington, 542 U.S. 296 (2004)[12] to the United States

21

22       [11]  In Apprendi, the United States Supreme Court held as a matter of constitutional law
that, *other than the fact of a prior conviction,* "any fact that increases the penalty for a crime

23  beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a
reasonable doubt."  Apprendi, 530 U.S. at 490 (emphasis added).  By its own terms, Apprendi

24  only applies to cases on direct review.

25       [12]  In Blakely, the Supreme Court held that the "statutory maximum for Apprendi
purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected

26  in the jury verdict or admitted by the defendant."  Blakely, 542 U.S. at 303.

1  Sentencing Guidelines.  "Any fact (*other than a prior conviction*) which is necessary to support a
2  sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury
3  verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."
4  Booker, 543 U.S. at 243 (emphasis added).  However, by its own terms, the Booker holding only
5  applies "to all cases on direct review or not yet final, with no exception for cases in which the
6  rule constitutes a 'clear break' with the past."  Id. at 268 (citation omitted).

7          This circuit has determined that the decisions relied upon by petitioner do not
8  apply retroactively to cases on collateral review.  The Ninth Circuit, applying Teague v. Lane,
9  489 U.S. 288, 310 (1989), has refused to give retroactive effect of the rule in Blakely to any case
10 that was final before Blakely was decided; that is, to any case on collateral review.  Schardt v.
11 Payne, 414 F.3d 1025, 1036 (9th Cir. 2005).  Using the same analysis, the Ninth Circuit has held
12 that the rule in Booker does not apply retroactively to cases on collateral review.  See United
13 States v. Cruz, 423 F.3d 1119, 1120-21 (9th Cir. 2005) ("Booker is not retroactive, and does not
14 apply to cases on collateral review where the conviction was final as of the date of Booker's
15 publication.").

16         In the instant case, petitioner's conviction became final ninety days after the April
17 22, 1999 order by the California Supreme Court denying his petition for review.  (Respondent's
18 Ex. B); Beard v. Banks, 542 U.S. 406, 411-13 (2004) ("State convictions are final for purposes of
19 retroactivity analysis when the availability of direct appeal to the state courts has been exhausted
20 and the time for filing a petition for a writ of certiorari has elapsed or such a petition has been
21 finally denied"); Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999) (the period of "direct
22 review" in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file a
23 petition for a writ of certiorari with the United States Supreme Court).  Because petitioner's
24 conviction became final prior to Booker and Blakely, neither Booker nor Apprendi apply to
25 petitioner's collateral attack on his sentence.

26         Petitioner's reliance on People v. McGee, 38 Cal.4th 682 (2006), is unavailing for

1  two reasons.  First, McGee's case was on direct, not collateral, review.  Second, McGee was

2  convicted after <u>Booker</u> and <u>Blakely</u> were decided.

3          Accordingly, the state court's rejection of this claim for relief was neither contrary

4  to, nor an unreasonable application of, controlling principles of United States Supreme Court

5  precedent, and this claim for relief should be denied.

6                              ii.  <u>Improper Firearm Enhancements</u>

7          In ground 9, petitioner claims that California Penal Code § 654[13] prohibits

8  punishment for his conviction of possession of a firearm by an ex-felon because a gun-use

9  enhancement was imposed on two other counts.  Petitioner contends this resulted in

10 unconstitutional multiple punishment, and some of the firearm-related sentences must be stayed.

11 Respondent counters that this claim is not a federal question, and petitioner has failed to

12 demonstrate a denial of due process.

13         The last reasoned rejection of this claim is the decision of the California Court of

14 Appeal for the Third Appellate District on petitioner's direct appeal.  The Court of Appeal found

15 that the crime of possession of a firearm by a felon

16             is committed the instant the felon in any way has a firearm within
              his control. . . .  What the ex-felon does with the weapon later is
17             another separate and distinct transaction undertaken with an
              additional intent which necessarily is something more than the
18             mere intent to possess the proscribed weapon.

19 (Respondent's Ex. B at 12-13, quoting <u>People v. Ratcliff</u>, 223 Cal.App.3d 1401, 1414 (1990).)

20 The Court of Appeal then rejected petitioner's claim, as follows:

21 _____
              [13]  California Penal Code § 654 provides, in relevant part:
22
23             An act or omission that is punishable in different ways by different
              provision of law shall be punished under the provision that
              provides for the longest potential term of imprisonment, but in no
24             case shall the act or omission be punished under more than one
              provision. An acquittal or conviction and sentence under any one
25             bars a prosecution for the same act or omission under any other.

26 California Penal Code § 654(a).

> In this case, the evidence showed that [petitioner] gained custody of the firearm at his friend's house. At that instant, the crime was complete. It was predicated on [petitioner's] act of possessing the firearm. His later conduct, striking Trujillo and shooting McGuire, is not the same act as possession. Consequently, section 654 which prohibits multiple punishments for the same act or conduct, has no application. (*Id*. at pp. 1410-1414.) The trial court properly sentenced [petitioner] to consecutive terms for the possession count and the weapon enhancement.

(Respondent's Ex. B at 13.)

As an initial matter, petitioner's claim appears to be premised on state law. Petitioner's claims based on California Penal Code § 654 are not cognizable. See Watts v. Bonneville, 879 F.2d 685, 687 (9th Cir.1989) (holding that claims based on California Penal Code § 654 are not cognizable on habeas review); see also Estelle, 502 U.S. at 67.

To the extent petitioner's claim is premised on the Double Jeopardy Clause, his claim fails because the jury's finding that petitioner was guilty of assault with a firearm (Counts 2 & 3), and the jury's verdict that petitioner was a felon in possession of a firearm (Count 4) involve separate offenses, i.e., they do not involve a single course of conduct. To commit assault with a firearm, a person need not be a felon; therefore, the crime of being a felon in possession of a firearm (California Penal Code § 12021, subd. (a)) is not a necessarily-included offense of assault with a firearm (California Penal Code § 245, subd. (a)(2)). Therefore, each offense required proof of an element that the other did not. See Dowling v. United States, 493 U.S. 342, 355 (1990) ("Two offenses are considered the 'same offense' for double jeopardy purposes unless each offense requires proof of a fact that the other does not.").

Therefore, the state court's rejection of this claim for relief was neither contrary to, nor an unreasonable application of, controlling principles of United States Supreme Court precedent. This claim for relief should be denied.

### iii.  Improper Sentence Calculation

In ground 10, petitioner contends the trial court improperly calculated petitioner's sentence. (Am. Pet. at 14.) Petitioner argues he should have been sentenced to 25 years to life

because California Penal Code § 667 option 2 provides the longest sentence, 25 years to life.

Respondent argues that petitioner has not demonstrated that the imposition of consecutive

sentences violated the constitution.  (Dkt. No. 36 at 49.)

"The decision whether to impose sentences concurrently or consecutively is a

matter of state criminal procedure and is not within the purview of federal habeas corpus."

Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994).  Accordingly, petitioner's

challenge to the judge's decision to impose consecutive sentences fails to state a cognizable

federal claim and should be rejected.

VI.  Conclusion

For all of the above reasons, the undersigned recommends that petitioner's

application for a writ of habeas corpus be denied.  If petitioner files objections, he shall also

address whether a certificate of appealability should issue and, if so, why and as to which issues.

A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a

substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a

writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

objections shall be filed and served within fourteen days after service of the objections.  The

////

////

////

////

1  parties are advised that failure to file objections within the specified time may waive the right to

2  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED:  October 13, 2010

4

5

6

7  KENDALL J. NEWMAN
   UNITED STATES MAGISTRATE JUDGE

8  brya1702.157

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26